UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMIA R. CALLAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  No. 1:16-cv-00827-JMS-MJD |
| | ) |
| NANCY BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**<u>ENTRY REVIEWING THE COMMISSIONER'S DECISION</u>**

On August 10, 2012, Demia R. Callahan filed a claim for disability insurance benefits alleging a disability onset date of March 11, 2011. [Filing No. 13-2 at 16.] Her claim was denied initially on October 17, 2012 and upon reconsideration on January 22, 2013. [Filing No. 13-2 at 16.] A hearing was held before Administrative Law Judge Ronald T. Jordan (the "<u>ALJ</u>") on October 16, 2014. [Filing No. 13-2 at 16.] The ALJ issued a decision on December 9, 2014, determining that Ms. Callahan was not disabled as defined by the Social Security Act. [Filing No. 13-2 at 28.] The Appeals Council denied Ms. Callahan's request for review on February 9, 2016, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 13-2 at 2.] Ms. Callahan now seeks judicial review under 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

---

[1] The Court has substituted Nancy Berryhill as the proper Defendant to this action, given that she became the Acting Commissioner of the Social Security Administration on January 23, 2017. *See* "Meet Our New Acting Commissioner," Social Security Administration Blog, *available at* http://blog.ssa.gov/meet-our-new-acting-commissioner/ (last visited March 27, 2017).

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last ... not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence: "(1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national

economy." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).

"If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. §§ 416.920(E)(g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868. If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### RELEVANT BACKGROUND

Ms. Callahan was 40 years old on her disability onset date.[2] [Filing No. 13-2 at 27.] She completed some high school and earned a GED. [Filing No. 13-3 at 10.] Her previous work experience includes working as a nurse's aide, job coach, and waitress. [Filing No. 13-3 at 10.] Ms. Callahan seeks disability benefits because of functional limitations due to fibromyalgia, degenerative disc disease, chronic pain, and depression. [Filing No. 13-3 at 3.]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Ms. Callahan is not disabled. [Filing No. 13-2 at 28.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Callahan meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since her alleged onset date.[3] [Filing No. 13-2 at 18.]

- At Step Two of the analysis, the ALJ found that Ms. Callahan has the following severe impairments: degenerative disc disease; fibromyalgia; migraines/headaches; depression; and anxiety disorders. [Filing No. 13-2 at 18.]

- At Step Three of the analysis, the ALJ concluded that Ms. Callahan did not have an impairment or combination of impairments that met or medically equaled the severity

---

[2] Both parties provided a detailed description of Ms. Callahan's medical history and treatment in their briefs. [Filing No. 20; Filing No. 26.] Because that implicates sensitive and otherwise confidential medical information concerning Ms. Callahan, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and 20 C.F.R. § 416.972(a).

of one of the listed impairments. [Filing No. 13-2 at 19-21.] The ALJ considered various listings in making that conclusion, but ultimately found that Ms. Callahan did not meet any of them. [Filing No. 13-2 at 19-21.]

- After Step Three but before Step Four, the ALJ found that Ms. Callahan had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) except: lifting, carrying, pushing or pulling ten pounds occasionally and five pounds frequently, standing and walking for two hours in an eight hour workday; sitting for six hours in an eight hour workday; occasionally stooping, balancing, crouching, crawling, kneeling, and climbing ramps and stairs; no climbing ladders, scaffolds, or ropes; no work around hazards such as unprotected heights or unguarded, dangerous moving machinery; and limited to simple, repetitive tasks requiring no independent judgment regarding basic work processes and static and predictable work goals from day to day." [Filing No. 13-2 at 21.]

- At Step Four of the analysis, the ALJ found that Ms. Callahan was unable to perform "any past relevant work." [Filing No. 13-2 at 27.]

- At Step Five of the analysis, the ALJ concluded that considering Ms. Callahan's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Filing No. 13-2 at 28.] The ALJ relied on testimony from the vocational expert ("VE") that identified jobs such as general office clerk, order clerk, and coupon scanner/counter that the VE testified Ms. Callahan could perform. [Filing No. 13-2 at 28.]

Ms. Callahan sought review of the ALJ's decision from the Appeals Council, but that request was denied on February 9, 2016, making the ALJ's decision the Commissioner's final

5

decision subject to judicial review. [Filing No. 13-2 at 2.] Ms. Callahan now seeks judicial review under 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Callahan presents three arguments in support of her request for review: (1) that substantial evidence does not support the ALJ's finding that Ms. Callahan does not meet or medically equal a listed impairment;[4] (2) that the ALJ was required to summon a medical expert (specifically, a rheumatologist) to testify as to whether Ms. Callahan's conditions meet or medically equal a listed impairment; and (3) that substantial evidence does not support the ALJ's Step Five determination that Ms. Callahan is not disabled because she could perform some jobs existing in the national economy. The Court addresses each of these arguments in turn.

### A. Whether Ms. Callahan Meets or Medically Equals a Listed Impairment

Ms. Callahan argues that in making the determination that she does not meet or medically equal a listed impairment, specifically regarding her fibromyalgia, the ALJ failed to give controlling weight to Ms. Callahan's treating physicians' opinions and relied on his own layperson opinion. [Filing No. 20 at 10.] In response, the Commissioner argues that the ALJ appropriately considered each physician's opinion, and that he did not rely on his layperson opinion to render his decision. [Filing No. 26 at 16-18.] The Commissioner also contends that the ALJ adequately considered all medical evidence in the record in making his determination regarding Ms. Callahan's fibromyalgia.

---

[4] It is not clear from Ms. Callahan's brief whether she is challenging the ALJ's finding regarding whether she meets or medically equals a listed impairment, or the ALJ's finding regarding her RFC. The Commissioner understood Ms. Callahan to be making an argument regarding a listed impairment, and Ms. Callahan did not object to that interpretation in her Reply. The Court therefore construes Ms. Callahan's argument as regarding whether she met or medically equaled a Listing.

Ms. Callahan argues that "[t]he denial decision must be reversed because the ALJ erroneously failed to give controlling weight to the opinions of the claimant's treating physicians that she was disabled." [Filing No. 20 at 10.] First, a medical opinion that a claimant is disabled, unable to work, cannot perform a past job, or meets a listing is never entitled to controlling weight because those issues are administrative findings reserved to the Commissioner. *See* SSR 96–5p; 20 C.F.R. § 404.1527(d). Second, in any event, none of the physicians who treated Ms. Callahan made any such determination.

Ms. Callahan does not identify which physicians are her treating physicians, and which opinions the ALJ failed to assign controlling weight. Moreover, she makes only the vague statement that "the ALJ failed to give controlling weight to the opinions of the claimant's treating physicians," without citing to any evidence in the record that contradicts the ALJ's findings. The Court's own review of the administrative record reveals that Ms. Callahan was treated for her fibromyalgia by no fewer than six medical health professionals between 2010 and 2014, some at the same time. [Filing No. 13-7; Filing No. 13-8.] These individuals all either noted a previous diagnosis of fibromyalgia or confirmed that diagnosis. [Filing No. 13-7; Filing No. 13-8.] Some labeled Ms. Callahan's fibromyalgia as "severe," and others did not. [Filing No. 13-7; Filing No. 13-8.]

The ALJ repeatedly relies on those opinions in his decision, and he concluded that Ms. Callahan suffers from the "severe" impairment of fibromyalgia. [Filing No. 13-2 at 23-24.] Instead of disregarding the medical evidence, the ALJ appears to have relied on that evidence in concluding Ms. Callahan did indeed suffer from fibromyalgia, but that the clinical observations from the treating physicians did not support a finding of disability. He notes that their clinical findings were "sparse," and that "at most there is minimal evidence from 2011 of an antalgic gait,

7

limited ranges of motion in the lumbar spine, and lumbar spine tenderness." [Filing No. 13-2 at 23.] He also observes that the treatment notes indicated that during Ms. Callahan's 2012 and 2013 office visits, she was not in acute distress, [Filing No. 13-2 at 24], and that during several of those visits, Ms. Callahan did not display any gait abnormality, limitation of motion, or neurological deficit. [Filing No. 13-2 at 24.] Ms. Callahan does not identify any conclusions or observations made by the treating physicians that the ALJ should have relied upon but instead discounted.

Ms. Callahan asserts that instead of appropriately crediting her treating physicians' medical opinions, the ALJ "played doctor" and reached his own layperson conclusion regarding Ms. Callahan's fibromyalgia. [Filing No. 20 at 18.] Ms. Callahan contends that the ALJ "displayed a pervasive misunderstanding of [fibromyalgia]," and that "the ALJ appears to be basing his medical 'opinion' on 'objective medical evidence' which does not exist for fibromyalgia." [Filing No. 20 at 18.] Ms. Callahan does not cite to any specific statement by the ALJ that would provide evidence of the ALJ's allegedly improperly made medical findings, and the Court will not speculate as to which elements of the ALJ's thirteen-page decision Ms. Callahan disputes. The Court notes, however, that the ALJ stated that "the evidence of record fails to document clinical findings detailing the exact location and number of the claimant's tender points." [Filing No. 13-2 at 23.] If this is the objective evidence to which Ms. Callahan refers (and this appears to be the Commissioner's interpretation of Ms. Callahan's argument), an ALJ may appropriately rely on evidence demonstrating the location and number of tender points as supporting a diagnosis of fibromyalgia. *See* SSR 12-2p, § 11.

For the reasons described above, the Court concludes that Ms. Callahan's argument that substantial evidence does not support the ALJ's determination fails.

### B. Medical Advisor

Ms. Callahan also argues that the ALJ was required to summon a medical advisor—specifically, a rheumatologist—to testify as to whether Ms. Callahan's combined impairments medically equal a listed impairment. The Commissioner responds that the ALJ appropriately consulted experts—several state agency examiners—who provided expert opinions regarding whether Ms. Callahan's impairments meet or equal a Listing.

The Seventh Circuit has concluded that the Disability Determination and Transmittal Forms completed by state agency physicians can "conclusively establish that consideration by a physician ... designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely upon the opinion of these medical experts." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (internal citation and quotations omitted). In this case, the ALJ considered evaluations completed by Shayne Small, M.D. on September 28, 2012, [Filing No. 13-3 at 22], and Jerry Smartt, M.D. on January 19, 2013, [Filing No. 13-3 at 12]. Dr. Small and Dr. Smartt both concluded that Ms. Callahan was not disabled and was capable of working at the "light" exertional level. [Filing No. 13-3 at 10-11; Filing No. 13-3 at 21.]

Ms. Callahan argues that the ALJ could not have reasonably relied on those opinions, because they did not consider all of the evidence in the record, including office treatment notes from later in 2013 and 2014. [Filing No. 20 at 13.] However, the ALJ made clear that he considered the fact that the agency reviewers were not privy to the entire medical record as it existed at the time of the hearing. Based on that, and his review of the evidence assembled after those physicians' opinions were issued, the ALJ concluded that those opinions were only entitled to "some" weight, and he assigned a lower level of functional capacity as a result. Moreover, the

ALJ's opinion makes clear that he considered the treatment notes cited by Ms. Callahan, as he stated:

> [f]urthermore, clinical findings from 2013 through 2014 consistently report the claimant was neurologically intact with a normal gait. Likewise, these records fail to document clinical evidence of limitations of motion or difficulty performing fine or gross movements effectively. It is also noteworthy that treatment records consistently report the claimant was not in acute distress during visits and fail to document clinical evidence consistent with severe pain.

[Filing No. 13-2 at 24.] In making that determination, the ALJ cited treatment notes covering January 2013 through September 2014 from Vickie Burch, NP, David Wulff, PA, Daniel Palmer, MD, and Vishwajit Brahmbatt, MD.

Ms. Callahan conclusorily asserts that "presumably if [agency physicians] had reviewed all of the evidence they would have reasonably determined she was totally disabled." [Filing No. 20 at 13.] However, Ms. Callahan points to no findings within those treatment notes that contradict the agency examiners' opinions. Ms. Callahan's presumption is not enough to establish error on the part of the ALJ, and the Court finds that the ALJ properly considered the evidence that developed subsequent to the dates of the agency physicians' opinions.

### C. Step Five Determination

Ms. Callahan argues that the ALJ erred at Step Five because his "residual functional capacity evaluation ignores his own finding that the claimant had moderately impaired concentration, persistence, or pace." [Filing No. 20 at 16.] The Commissioner argues that the ALJ adequately accounted for Ms. Callahan's identified limitations. [Filing No. 26 at 11-12.]

The ALJ limited Ms. Callahan to "simple, repetitive tasks requiring no independent judgment regarding basic work processes and static and predictable work goals from day to day." [Filing No. 13-2 at 21.] The ALJ stated that these restrictions would "prevent[] the claimant from performing higher-level complex or varied tasks that require great levels of sustained

concentration/attention or persistence to successfully complete." [Filing No. 13-2 at 25.] He also noted that these restrictions took into account the effects of Ms. Callahan's medications, as well as the distracting effects of her pain. [Filing No. 13-2 at 25-26.]

The Court concludes that substantial evidence supports the ALJ's Step Five determination. Ms. Callahan has identified no other limitation that would be required by her restrictions, what record evidence would support more stringent restrictions, or in what manner the ALJ's determination is deficient.

The Court notes that on this issue, Ms. Callahan's brief consists entirely of case citations, without a single reference to factual evidence, the record, or any citation to the ALJ's determination. Ms. Callahan conducts no analysis or application of the cases cited to the facts. This type of underdeveloped argument amounts to waiver, and the Court has repeatedly cautioned Ms. Callahan's counsel that this type of advocacy is not an effective means of argumentation. *See Poston v. Astrue*, 2010 WL 987734, at *7 (S.D. Ind. 2010); *Reese v. Astrue*, 2009 WL 499601, at *5 (S.D. Ind. 2009). The Court cannot and will not forge her arguments for her.

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue,* 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Ms. Callahan to overturn the Commissioner's decision that Ms. Callahan does not qualify for disability insurance

benefits. Therefore, the decision below is **AFFIRMED.** Final judgment will be entered accordingly.

Date: March 27, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov